UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ALEXANDER W. NDAULA,
          Petitioner,


          - VS -

TOM RIDGE, SECRETARY FOR THE U.S.
DEPARTMENT OF HOMELAND SECURITY;
FRANK MONIN, DIRECTOR HEADQUARTERS
POST ORDER DETENTION UNIT (HQPDU);
U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT (ICE); CRAIG ROBINSON,
FIELD INTERIM DIRECTOR — NEW
ORLEANS ICE DISTRICT;
          Respondents.

ALIEN FINE NO: 78 635 873

CIV. ACTION NO: _____

PETITION FOR A WRIT OF
HABEAS CORPUS, 28 USC
§ 2241 AND COMPLAINT
FOR INJUNCTIVE RELIEF
TO REMEDY DUE PROCESS
DEPRIVATIONS AND
SECURE IMMEDIATE RELEASE.
ZADVYDAS v. DAVIS, 533
US 678 (2001)

Petitioner Ndaula, pro se, hereby petitions this Court
for a writ of habeas corpus to secure his release from
custody and to enjoin his continued post order detention.

## ISSUES PRESENTED:

I. Whether in light of any existing "extraordinary
circumstances" petitioner should be allowed to name a
national level agency official as the proper custodian
and allow this court to exercise personal jurisdiction?

II. Whether Ndaula's continued detention is unlawful?

1

## CUSTODY:

1. Petitioner is in the physical custody of the Respondents pursuant to the authority of the Bureau of Immigration and Customs Enforcement (BICE) under the Department of Homeland Security (DHS). Petitioner is detained at the Ettowah County Detention Center. The Respondents have contracted with the Ettowah County Detention Center — GADSDEN, ALABAMA to house immigration detainees.

Petitioner is under the direct control of the respondents and their agents. Specifically, in a decision dated 1-21-04 he was informed through an agent that all future decisions regarding custody determination will be done at HQPDU — Washington, DC. [Ref= exh-1 letter from deportation officer, Jose Flores].

## JURISDICTION:

2. This action arises under the Constitution of the United States, and the Immigration and Nationality Act ("INA"), 8 USC § 1101 et. seq., as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110

(2)

Stat. 1570, and the Administrative Procedure Act ("APA"), 5 USC § 701 et seq. This Court has jurisdiction under 28 USC § 2241, art. I § 9, cl. 2 of the U.S. Constitution ("Suspension Clause"), and 28 USC § 1331, as the Petitioner is presently in custody under color of the authority of the United States, and such custody is in violation of the Constitution, laws, or treatises of the United States. See, Zadvydas v. Davis, 533 US 678 (2001).

Jurisdiction is further conferred upon this Court to make a determination as to "whether there exists any extraordinary circumstances to warrant the naming of respondents who are not immediate custodians?" See, Vasquez v. Reno, at 233 F.3d 696. (... under "extraordinary circumstances" should the Attorney General "be named as the respondent to an alien from one site to another ..."); see also, Armentero, 340 F.3d 1064-65 (holding ... While a petitioner's immediate physical custodian ..., the custodian requirement is sufficiently flexible to permit the naming of respondents who are not immediate physical custodians if practicality, efficiency, and the interests of justice so demand ...) (Designating the Interim District Director ... would entail some of the same pitfalls ... It would illogically tether the detainee's petition ... complicating adjudication of the petition when a

3

detainee is transferred to a facility in another region).
Id. at 1071.

Specifically, for purposes of determining "whether extra-ordinary" circumstances here are present to warrant naming of a national agency figure head as the proper respondent in this petition, Petitioner demonstrates bellow that the U.S. ICE has shifted him through four different prisons/holding centers within the last three months, from January to April 12, 2004.

This Court may grant relief pursuant to 28 USC § 2241, 5 USC § 702, and the All Writ Act, 28 USC § 1651.

## VENUE.

3. Pursuant to Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 493-500 (1973), venue lies in the United States District Court for the District of Massachusetts, the judicial district in which petitioner resides.

4

Venue is determined pursuant to 28 USC § 1391(e).
Pursuant 1391(e)(2), the three factors to be considered are
in determining venue are (1) where all the material events
took place; (2) where the records and witnesses pertinent
to petitioner's claim are likely to be found, and (3) the
relative convenience of the forum for the parties.
**Cf.** Henderson v. INS, 157 F.3d 106, 128 n.5 (2nd Cir. 1998)
(citing Braden, 410 US 484, 493-94 (1973)).


In the present case, the crimes for which petitioner was
found removable were birthed in Massachusetts, and he
served his sentence in Massachusetts. Petitioner's removal
proceeding although commenced at the issuance of a Notice
To Appear (NTA) at the Boston ICE District office,
the proceedings were concluded before an Immigration
Judge in Louisiana, during which time petitioner
was detained at the FDC-Oakdale, Louisiana.


Petitioner was on January 12, 2004 transferred by the
government from Oakdale to another rural state facility
in Ferriday, Louisiana. Those two detention centers fall
within different district court divisions of Louisiana.
Then on April 9, 2004 Petitioner was again transferred
from Ferriday, Louisiana to another facility in Pine Prairie,

Louisiana and again on April 12, 2004 he was transferred to Ettawah County Detention Center in Gadsden, Alabama from where he files the instant petition.

In a decision to continue detention dated 1/21/04 Petitioner was advised that if he is not released or removed by 3/20/04 jurisdiction over his case would be transferred to Headquarters Post order Detention Unit in Washington, DC. The records concerning petitioner's underlying crime and removal proceedings are located in either Massachusetts or the District of Columbia. The materials in the District of columbia could easily be sent to Massachusetts.

Furthermore, witnesses residing in Massachusetts would be severely inconvenienced by venue in the Northern District of Alabama, where petitioner is now confined. In any event, none of the material events pertinent to the petitioner's case took place in the state of Alabama. Petitioner's family members and friends residing in Massachusetts are witnesses for whom Massachusetts provides a convenient forum.

6

These witnesses may be necessary to provide information relative to petitioner's underlying conviction or his immigration status. At the same time, witnesses to petitioner's deportation proceedings would be inconvenienced by travel from the Western District of Louisiana, - where the proceedings transpired -, and the District of Columbia, - where jurisdiction over his final custody determination now lies, to Massachusetts. However, it is unlikely that these witnesses would be necessary, since the transcript of the proceedings and other relevant records can be sent to Massachusetts.

Petitioner is currently incarcerated within Alabama, but his presence in Massachusetts is not anticipated. Mr. Ridge's presence in Massachusetts is not disputable, because he can be served process through the U.S. Attorney's Office. See, Braden, supra, at 495. (... "so long as the custodian can be reached by service of process".) see also, U.S. ex rel vs. Sero Preiser, 506 F.2d 1115, 1128 (2nd Cir. 1974) [noting jurisdictional grant in § 2241 as co-existent with scope of service].

Inasmuch, the Court should defer to petitioner's choice of venue.

7

## PARTIES

4.    Petitioner Alexander W. Ndaula is a male citizen of Uganda. He was born in 1981 in Soweto, South Africa. He was convicted of larceny of a credit card in the Natick District Court State of Massachusetts in violation of Mass. Gen. Laws Ch. 266 § 37 B (b). For that offense he was sentenced to imprisonment for eleven months. On September 13, 2001 the INS commenced proceedings by issuing a Notice to Appear.


Respondent Tom Ridge is the Secretary for the Department of Homeland Security*. The United States' Immigration and Custom Enforcement is a subdivision of his Department. He is therefore made party to this action in his official capacity and is a legal custodian. See, 2002 Homeland Security Act.


Respondent Frank Morin is the Director of the Headquarters Post Order Detention Unit in Washington, DC. He is charged with

---

\* Pursuant to the 2002 Homeland Security Act, certain functions of the former INS were transferred to the newly created Department of Homeland Security and, renamed the Bureau of Immigration and Customs Enforcement.

making final custody determinations for non-removable aliens such as the Petitioner. He is also a legal custodian and is therefore sued in his official capacity.

Respondent Craig Robinson is the Interim Field Director of the New Orleans ICE district in which district the petitioner's removal proceedings concluded. He is responsible for the detention and removal of aliens in that district. He is also sued in his official capacity.

## PROCEDURAL HISTORY

5.    Petitioner was on January 23, 2002 taken into INS custody upon discharge from Massachusetts State authorities. On February 5, 2002 the INS transferred petitioner to the New Orleans INS district and detained him at Oakdale, Louisiana. Between February 5, 2002 and March 26, 2003 a series of hearings were conducted to determine Mr. Ndawla's removability and any relief from removal he could have been entitled to. On March 26, 2003 a hearing was conducted to determine whether Mr. Ndawla is entitled to relief under INA § 241 (b)(3), Withholding of removal for individuals who can demonstrate a genuine fear of persecution upon removal by their native governmental authorities.

9

The immigration Judge denied petitioner's application finding that conditions in his native had substantially changed such that it was "no longer more likely than not" that his life or freedom "would be threatened in the future." Petitioner appealed and the Board of Immigration Appeals sustained his appeal on 9/29/03. The order of removal became final that same date.

Respondents then placed Mr. Ndaula on custody review provisions pending either removal to a third party country or eventual release on supervised release conditions. On 1/21/04 respondents issued a decision to continue detention stating that "efforts are ongoing to obtain travel documents...." Notably, the decision erroneously states that petitioner was denied the relief mentioned and, conspicuously fails to relay any mention of any likelihood of removability in the near foreseeable future, even when the third party country South Africa had as earlier on as 11/20/03 indicated it would not issue any travel documents.

Petitioner has at all times material hereto cooperated with all governmental efforts to obtain him a travel document. He has submitted a passport application with finger prints and even

10

made several written requests to the South African Consulate · [Ref. Exh. 1 - letter to Embassy officials].

In the meantime the petitioner has been bounced around numerous jurisdictions without a meaningful review of his custody status, thus arbitrarily prolonging his detention. It is now over the 6 months presumptive removal period announced by the Supreme Court in Zadvydas, supra, even where the record is clear petitioner's removal is unlikely to occur due to the fact his deportation was withheld pursuant to INA § 241 (b)(3).

## LEGAL ANALYSIS

6    Petitioner Ndaula has petitioned the Court for a writ of habeas Corpus to remedy his prolonged detention and to enjoin the respondents from further detaining him.

## DISCUSSION

## AS A TRESHHOLD MATTER WHERE THERE IS NO SIGNIFICANT LIKELIHOOD OF REMOVAL IN THE

11

NEAR FORESEEABLE FUTURE, AN ALIEN's PROLONGED DETENTION IS UNAUTHORIZED BY STATUTE. ZADVYDAS V. DAVIS, 121 S.Ct. 2491 at 673.

Petitioner's post order detention is permitted solely for securing removal to a third country. Under the "totality of circumstances" of the case that goal is not attainable.

The Supreme Court in Zadvydas, supra, opined that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute". That Court stated, "In answering this basic question the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the Court should hold continued detention unreasonable and no longer authorized by statute ..." Id. at 673. "And if removal is reasonably foreseeable, the habeas court should consider the risk of the alien's committing further crimes as a factor potentially justifying confinement within that reasonable removal period. See, supra at

12

690-92, 150 L. Ed 2d. at 666-667." Ibid.

Here it is abundantly clear that Ndaula's removal is not likely to occur in the reasonably near foreseeable future. Pursuant to INA §241(b)(3), the statute providing relief to petitioner, he will not be removed absent a fundamental change in circumstances giving rise to his claim of persecution. 8 CFR 208.16. Ipso facto, coupled with the Government's failure to identify a third party willing country for removal, the Court should find that petitioner's continued detention is prohibited as a matter of law.

> "... After this six months period, once an alien
> provides good reason to believe that there is no
> significant likelihood of removal in the reasonably
> foreseeable future, the Government must respond with
> evidence sufficient to rebut that showing." Id at 674.

Under INA § 241(a)(6), 8 USC § 1231(a)(6), the Gov't. is to remove aliens within 90 days of administering a final order of removal. Petitioner has remained in post order detention for now 7 months.

13

In _Zadvydas, supra_, the Supreme Court recognized six months to be the presumptively reasonable removal period in most cases. Because his removal is unlikely to occur within the reasonable near foreseeable future, any governmental interest to effectuate removal does not exist and, is superseded by the petitioner's interest to be free from bodily restraint as provided for under the U.S. Constitution's due process clause. _Zadvydas_, thus interpreted INA § 241 to allow continued detention only for a period reasonably necessary to secure the alien's removal. _Id._

The Due Process Clause of the United States Constitution, entitles aliens to a timely and meaningful opportunity to demonstrate that he should not be detained. The respondents here have violated the agency's promulgated regulations by failing and/or refusing to release petitioner under the conditions delineated in 8 CFR § 241.5 (2001) [Establishing conditions of release after removal period].

14

# RELIEFS REQUESTED

Wherefore, Petitioner prays the Honorable Court to issue an order declaring:

I. Mr. Ndaula's continued detention under these circumstances is unconstitutional in light of the Supreme Court's decision in <u>Zadvydas, supra</u>, and further enjoin Respondents from further continuing petitioner in detention.

II. Further issue an order granting the writ and ordering Petitioner's immediate release from custody.

III. The Court may further grant such other and further relief as it deems appropriate.

Respectfully Submitted,

Dated: 4/21/04

_____
ALEXANDER W NDAULA
ETTOWAH COUNTY DET. CTR.
827 FORREST AVE
GADSDEN, AL 35901

ATTACHMENTS

Alexander NDAULA
A78 635 873
CPCF II-D
26362 HWY 15
Ferriday, LA 71334

Mr. Ndaula,

    I have received your correspondences and forwarded them to
your file. Your most recent letter requests that our offices release
you on supervision. As was probably explained to you earlier, our
office no longer holds jurisdiction over your case. Headquarters in
Washington, DC will now determine whether you should remain in
custody or be released on Bond/OR/Supervision.

JMF

ALEXANDER W. NDAULA
A78-635-873
CPCF II-D
26362 HWY 15
FERRIDAY, LA 71334.

RECEIVED
2004 FEB 19 PM 1:14
DIS-OAKDALE, LA.

FEBRUARY 4, 2004

ATTN: J. Flores
    Deportation Officer
    U.S. ICE
    Department of Homeland Security
    1010 East Whatley Road
    Oakdale, LA 71463

            RE: REQUEST TO BE RELEASED UNDER
                SUPERVISED RELEASE CONDITIONS

    Dear Mr. Flores:

    I am writing to request that you recommend my release
    in the event my removal cannot be effectuated. You
    recently sent me a decision to continue in detention based
    on the assertion that ongoing efforts are still in effect
    to obtain my travel document. By that very fact I have
    submitted a subsequent request to the South African
    consulate for my travel document. As required by law
    I have cooperated with you in every aspect of obtaining

                    (1)

my travel document I have submitted photographs and
fingerprints and even a signed application for
a South African passport. You told me the British
consulate will not issue me travel documents for lack
of ties. It is not of my own doing that no nation will
repatriate me I very much wish someone would repatriate
me because I'm sick and tired of languishing in
prison. I just want to go on with my life and
make up for these lost years in a positive productive
manner. In here I can't do anything productive at this
new facility. I cannot even enroll in any class I sit in
a dorm on lockdown for 24 hours a day. The situation
is very frustrating indeed and I don't know what else you
want me to do. I therefore pray that your office
will do something to get me out of detention so I
can regain my life and in the interest of justice.
Enclosed herewith, is a copy of my most recent
request to the South African consulate.

    Any assistance afforded this matter is appreciable
and I hope to hear from your office soon.

    Sincerely,

    Alexander Ndawla.

- HQ now has jurisdiction over his case
  release denied

- No copy of his request for a TD was
  submitted in envelope.

ALEXANDER W. NDAULA

A78 635 873

CPCFII - D

26362 HWY 15

FERRIDAY, LA 71334

FEBRUARY 4, 2004

ATTN: S. D. HANCOCK

SOUTH AFRICAN EMBASSY

3051 MASSACHUSETTS AVE, N.W.

WASHINGTON, D.C. 20008

RE: SUBSEQUENT REQUEST FOR ISSUANCE OF A
TRAVEL DOCUMENT:

Dear Mr. Hancock,

I am writing in a subsequent request for issuance of
travel documents for my person to S. Africa. In your letter
of 10/29/03 I was informed of the consulate's inability
to process a travel document for me. The same was copied
to my deportation officer Mr. J. Flores from the
Department of Homeland Security. Nonetheless, I still submitted
a passport application through Mr. Flores on November, 12,

(1)

which I understand to have been denied by this office on
November 25, 2003.

With all due respect for your office, I do not mean to
inconvenience your staff but I am required by law [U.S. law]
to continue to demonstrate that I am making reasonable
efforts to assist in my removal, thus the subsequent
request.

You may notice that I am writing you from a different
address other than the Oakdale-FDC address, well that is
because I was transferred recently to the CPCF Jail in
Ferriday, Louisiana. I'll eagerly await a response from
your office.

Your time and due consideration of this matter are both
appreciated.

Sincerely,

Alexander Ukanla

CC: T. Flores
    Dep't of Homeland Security
    U.S. ICE
    1010 E. Whatley Rd
    Oakdale, La 71463